# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Quality Custom Distribution, | |
|       Plaintiff/Counterclaim Defendant, | No. 1:21-cv-01534 |
| v. | Honorable Nancy L. Maldonado |
| International Brotherhood of Teamsters, Local No. 710, | |
|       Defendant/Counterclaim Plaintiff. | |

## ORDER

This matter comes before the Court on the parties' cross motions for summary judgment (Dkt. 42, 43.) Plaintiff Quality Custom Distribution ("QCD") filed this action to vacate an arbitration award finding QCD breached its agreement with Defendant, International Brotherhood of Teamsters, Local No. 710 ("Union"). (Dkt. 1.) Union separately initiated an action seeking to confirm and enforce the arbitration award. *Int'l Bhd. of Teamsters, Local 710 v. Quality Custom Distribution*, Case No. 1:21-cv-02521. On June 23, 2021, Judge Kendall reassigned and consolidated the cases. (Dkt. 28.) For the reasons stated in this Order, the Court grants Union's motion for summary judgment and denies QCD's motion for summary judgment because the Arbitrator's decision drew its essence from the parties' agreement. The arbitration award is confirmed. Defendant Union's request for attorneys' fees is denied. Civil case terminated.

## Background

Because this case is before the Court on summary judgment, the factual record is framed largely by the parties' Local Rule 56.1 statements of facts, although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Except as otherwise noted below, the following represents the undisputed facts based on the parties' Local Rule 56.1 statements and responses.[1] The parties agree that the key facts at issue here are not in dispute.

### I. The Arbitration and Award

QCD and Union are parties to a collective bargaining agreement ("CBA") entered into on

---
[1] The Court cites in particular to Union's response to QCD's statement of facts (Dkt. 44), and QCD's response to Union's statement of facts (Dkt. 45-1)..

June 1, 2019. (Dkt. 45-1 ¶ 2.)[2] QCD is a distributor for Starbucks stores located in the Chicago area, and Union represents the warehousemen, drivers, driver helpers, and sanitation employees employed by QCD. (Dkt. 44 ¶ 7; Dkt. 45-1 ¶ 1.) At the heart of the parties' dispute is the weekly hour guarantee provision of the CBA. (Dkt. 44 ¶ 6; Dkt. 45-1 ¶ 5.) Specifically, section 4.5 of the CBA guarantees that the top 80% of the seniority roster of QCD employees will have 40 hours of work per week, "or its equivalent in pay[.]" (Dkt. 44 ¶ 6; Dkt. 45-1 ¶ 5.) The CBA provides an exception to this 40-hour guarantee in the event of an "Act of God." (Dkt. 45-1 ¶ 5.)

In March of 2020, many Starbucks stores in the Chicago land area closed in response to the COVID-19 pandemic. (Dkt. 44 ¶ 8.) Because of these closures, QCD alleges that it had to reduce the hours for its employees from 40 hours per week to 30 hours per week. (*Id.* ¶ 9.) This reduction in hours lasted from April of 2020 until early June of 2020. (Dkt. 45-1 ¶ 8.) On April 17, 2020, Union filed a formal grievance against QCD pursuant to the procedures set forth by the CBA for failing to guarantee 40 hours of work per week during this time. (Dkt 44 ¶ 10; Dkt. 45-1 ¶ 9.) Because the grievance was ultimately not resolved, Union filed its arbitration demand against QCD for breach of the CBA. (Dkt. 45-1 ¶10.) Article 11 of the CBA governs the resolution of grievances and contains the following arbitration provision:

> The Arbitrator shall be bound by the express provisions of this Agreement and shall not have the power to add or subtract from or modify any of the express provisions of this Agreement, not create any obligation not expressly intended by the provisions of this Agreement, nor find that any time limited has been waived absent specific written agreement of the parties to such waiver. The Arbitrator's decision consistent with this authority shall be final and binding on the Employer, the Union, and the employees.

Following the arbitration hearing, the Arbitrator sustained Union's grievance and found that QCD breached the terms of the CBA by failing to provide the guaranteed 40 hours of work per week for its employees. (Dkt. 44 ¶¶ 14, 20; Dkt. 45-1 ¶ 14.)[3] The Arbitrator concluded that the COVID-19 pandemic was not an "Act of God" excusing QCD from performance of its obligations under the CBA. (*Id.*) In so holding, the Arbitrator recognized that the parties agreed the CBA did not define the term "Act of God," and therefore it was to be understood and applied in accordance with its plain and ordinary meaning. (Dkt. 42-3 at 55.) The Arbitrator explained that the term "Act of God" is ordinarily "understood to mean a natural hazard outside of human control, something for which no human may be held responsible." (*Id.*)

In reaching this conclusion, the Arbitrator considered the events surrounding the early months of the COVID-19 pandemic and concluded that the pandemic was not the direct cause of QCD's "general business downturn." (*Id.* at 57.) Rather, the direct cause was the lack of an appropriate response to the COVID-19 pandemic by the government. (*Id.*) With this backdrop, the Arbitrator found that any impact on QCD's business resulting in QCD reducing the number of hours per week of work for its employees was the result of human control, and not an "Act of God." (*Id.*) QCD now seeks to vacate the arbitration award on the grounds that the Arbitrator

---

[2] In citations to the docket, page numbers are taken from the CM/ECF header.

[3] While both parties dispute the other's characterization of the Arbitrator's award, it is undisputed that the Arbitrator sustained Union's grievance and held that QCD breached the CBA. (*See* Dkt. 42, Ex. C at 19.)

exceeded his authority and went outside of the terms of the CBA to render his decision. QCD specifically takes issue with the Arbitrator's reasoning in making his determination that the COVID-19 pandemic was not an "Act of God" sufficient to relieve QCD of its duty to perform under the CBA. On the other hand, Union argues that the Arbitrator's award was appropriate and now seeks an order from this Court compelling QCD to comply with the award.

## II.    Procedural History

The Court assumes the parties' familiarity with the course of litigation and thus summarizes the procedural history in brief. On March 19, 2021, QCD filed a petition to vacate the arbitration award and a motion to vacate the award in this Court. (Dkt. 1, 6.) On April 26, 2021, Union filed a motion to dismiss the petition, arguing that QCD improperly cited to the Federal Arbitration Act as the basis for the Court's jurisdiction. (Dkt. 16.) On May 11, 2021, Union filed a complaint to confirm and enforce the arbitration award against QCD. Complaint, *Int'l Bhd. of Teamsters, Local 710 v. Quality Custom Distribution*, No. 1:21-cv-01534 (N.D. Ill. Mar. 19, 2021), ECF No. 1. Union then moved the Court in this action to reassign that case and consolidate it with the instant case, which was granted on June 23, 2021. (Dkt. 27, 28.)

On October 19, 2021, this Court issued an order denying Union's motion to dismiss as moot, denying QCD's motion to vacate the arbitration award as moot, and directing QCD to file its answer to Union's complaint to enforce the arbitration award. (Dkt. 34.) The Court ultimately concluded that while QCD failed to establish that jurisdiction existed under the Federal Arbitration Act ("FAA"), QCD did allege sufficient facts to establish jurisdiction under the Labor Management Relations Act ("LMRA") because the LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." (Dkt. 34 at 3) (citing 29 U.S.C. §§ 185(a), (c)). The parties then both moved for summary judgment, which the Court will address below. (Dkt. 42, 43.)

### Legal Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a

3

genuine issue for trial." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F3.d 746, 751 (7th Cir. 2012).

In resolving a motion for summary judgment, the Court construes all evidence and draws all reasonable inferences in the non-movant's favor. *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). However, the Court makes "only reasonable inferences, not every conceivable one." *Spitz v. Proven Winners N. Am.*, LLC, 759 F.3d 724, 730 (7th Cir. 2014); *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture.").

## Discussion

Both QCD and Union filed motions for summary judgment – QCD is seeking an order vacating the Arbitrator's award, and Union is seeking an order enforcing it. Because of the overlap in the parties' motions, the court will address the merits of each at the same time.

### I. Validity of the Arbitration Award

The Court's role in reviewing a labor arbitration award is "very limited." *Ameren Illinois Co. v. Int'l Bhd. of Elec. Workers*, 906 F.3d 612, 616 (7th Cir. 2018) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960)). The Supreme Court has emphasized that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

At the same time, the arbitrator's authority is not limitless. In interpreting the terms of a collective bargaining agreement, the arbitrator "is confined to interpretation and application" of that agreement. *Id.* at 597. "He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id.* Courts must "resolve any reasonable doubt about whether an award draws its essence from the [CBA] in favor of enforcing the award." *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 768 (7th Cir. 2005).

The Seventh Circuit has acknowledged the difficulty in determining whether an arbitrator's award draws its "essence" from the terms of a collective bargaining agreement or instead relies on some "private notion of equity." *Ethyl Corp. v. United Steelworkers of Am.,* 768 F.2d 180, 185 (7th Cir. 1985). This is because "[w]henever an arbitrator misreads a contract, it is possible to say that his award fails to draw its essence from the contract; that the ground of the award is not the contract but the arbitrator's misreading." *Id.* The *Ethyl Corp.* court also recognized, however, that "so long as the award is based on the arbitrator's interpretation—unsound though it may be—of the contract, it draws its essence from the contract." *Id.* at 184. This must be the case because the parties bargained for the arbitrator's construction of the agreement—not the court's. *See United Steelworkers*, 363 U.S. at 599. Therefore, "[i]t is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either … that the award can be said not to 'draw its essence from the collective bargaining agreement[.]'" *Ethyl Corp.*, 768 F.2d at 184–85 (emphasis in original).

4

QCD asserts that the Arbitrator's award must be vacated because it does not draw its essence from the terms of the CBA. QCD argues the Arbitrator relied on a body of thought, feeling, policy, or law outside of the CBA in concluding that the COVID-19 pandemic was not an "Act of God" sufficient to excuse QCD from performance.

Union argues that the Arbitrator did not depart from the "essence" of the CBA in interpreting the meaning of the term "Act of God" and therefore that the arbitration award should be enforced. Union also points out that the parties agreed that the term "Act of God" was not defined by the CBA and that both Union and QCD indicated in their arbitration briefing that the Arbitrator should apply the term in accordance with its plain and ordinary meaning in reaching his decision. (*Id.* at 7.)

The Court finds that, as a matter of law, the Arbitrator did not exceed his scope in reaching his final award. It is undisputed that the Arbitrator interpreted the undefined term "Act of God" as it was used in the CBA. (Dkt. 44 ¶ 20; Dkt. 45-1 ¶ 16); *see Clear Channel Outdoor, Inc. v. Int'l Unions of Painters, Local 770*, 558 F.3d 670, 675–76 (7th Cir. 2009) (affirming arbitrator's award as drawing its essence from the collective bargaining agreement where the arbitrator "understood that it was his task to construe the provisions of the collective bargaining agreement and to apply those provisions to the facts presented to him."). In interpreting this term, the Arbitrator looked to section 4.5 of the CBA which states that "[i]n the event of an 'Act of God,' the Employee shall not be guaranteed 40 hours for that week." (Dkt. 42-4 at 55.) The Arbitrator explained that the typical definition of an Act of God is a "single incident that occurs quickly and without warning" and distinguished this from the COVID-19 pandemic, which the Arbitrator characterized as a "slow-moving disaster for which the human element has been a major contributing factor." (Dkt. 42-4 at 55.) Evidenced by the language in the CBA stating that in the event of an "Act of God" the employee would not be guaranteed 40 hours of work "*for that week*[,]" the Arbitrator found that this interpretation of the pandemic was consistent with the parties' intent in drafting the CBA. (*Id.* (emphasis added)).

In light of this reasoning, the Court finds that the Arbitrator was looking to and interpreting the language of the CBA to determine whether the COVID-19 pandemic was an "Act of God." For this reason, the Court will not overturn his award. *See Jasper Cabinet Co. v. United Steelworkers of Am.*, 77 F.3d 1025, 1029 (7th Cir. 1996) ("In sum, as long as an arbitrator's award is based on her interpretation of the contract, a court cannot disturb it.").

Moreover, from the Arbitrator's award, it appears the parties specifically requested the Arbitrator to interpret and apply this term. (Dkt. 42-4 at 55); *see also Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 635 (7th Cir. 2003) ("We would undermine the concept of finality in arbitration if we allowed Butler to prevail on its claim that the arbitrator lacked authority to consider the FMLA after Butler … actually placed the FMLA at the center of the parties' dispute."). Where QCD specifically requested that the Arbitrator interpret an undefined term in the CBA, QCD cannot now claim the Arbitrator went outside the scope of his authority in doing so.

QCD attempts to challenge the merits of the Arbitrator's decision by arguing that he misapplied the term "Act of God" and therefore got to the wrong result. (Dkt. 43 at 10.) QCD appears to make the argument that was both recognized and rejected by *Ethyl Corp.*—that the

5

arbitrator's misreading of the contract means his award does not draw its essence from the contract. It is clear to the Court, however, that the Arbitrator did in fact interpret the language of the CBA and apply that interpretation to reach his final award. This Court is not in the position to review the merits of a labor arbitration decision and will not vacate the award on this ground. *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 675 (7th Cir. 2009). Rather, "the standard asks only whether the arbitrator's interpretation can rationally be linked to the CBA." *Butler*, 336 F.3d at 633.

Because the Court finds that the arbitrator's interpretation of the term "Act of God" can be rationally linked to the CBA, and because the material issues of fact are undisputed, the Court enters summary judgment in favor of Union. QCD's motion for summary judgment is therefore denied and QCD must comply with the arbitration award.

## II.     Union's Request for Attorneys' Fees

The LMRA does not provide for attorneys' fees or costs for the prevailing party, but the Seventh Circuit has held that a losing party to a labor arbitration case may be required to pay fees and costs if its arguments were "frivolous" or "vexatious." *Alberici-Eby v. Local 520*, 992 F.2d 727, 734 (7th Cir. 1993). Arguments are frivolous when made "in bad faith—brought to harass rather than to win." *Local 879, Allied Indus. Workers of Am. v. Chrysler Marine Corp.*, 819 F.2d 786, 791 (7th Cir. 1987).

Union requests that the Court award it reasonable attorneys' fees and costs incurred in enforcing the arbitration award because QCD brought a meritless challenge to the arbitration award. (Dkt. 42-2 at 14.) In response, QCD claims that its argument is not meritless because a reading of the arbitration award reflects that the Arbitrator based his decision on his personal or political opinion outside of the CBA. While the Court disagrees with QCD's position, it finds no evidence of bad faith or that the claim was frivolous. *See id.*; *Johnson Controls, Inc. Sys. & Servs. Div. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can.*, 39 F.3d 821, 826 (7th Cir. 1994). Accordingly, Union's request for attorneys' fees and costs is denied.

## Conclusion

For the foregoing reasons, the Court grants Union's motion for summary judgment and denies QCD's motion for summary judgment. The Court denies Union's request for fees. Civil case terminated.

ENTERED: 3/22/24

_Nancy L. Maldonado_
_____
Nancy L. Maldonado
United States District Court Judge